IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2018

**STATE OF TENNESSEE v. MARDOCHE OLIVIER**

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2016-CR-619     Jill Bartee Ayers, Judge**

_____

**No. M2017-01618-CCA-R3-CD**

_____

The Defendant, Mardoche Olivier, was convicted by a jury of one count of evading arrest while operating a motor vehicle, a Class E felony. On appeal, the Defendant challenges the sufficiency of the evidence supporting his conviction, arguing that there was insufficient evidence that he "received any signal" from law enforcement "while operating a motor vehicle" to bring that vehicle to a stop or that he "intentionally fle[d] or attempt[ed] to elude" either officer. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and TIMOTHY L. EASTER, JJ., joined.

Edward E. DeWerff (on appeal); Mardoche Olivier, pro se (at trial); and Roger E. Nell, District Public Defender, and Charles S. Bloodworth, Assistant District Public Defender (elbow counsel at trial), Clarksville, Tennessee, for the appellant, Mardoche Olivier.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; John W. Carney, District Attorney General; and Daniel A. Stephenson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On May 2, 2016, the Montgomery County Grand Jury charged the Defendant with Class E felony evading arrest. See Tenn. Code Ann. § 39-16-603(b). The Defendant proceeded to a jury trial on November 28, 2016, where he represented himself with the assistance of elbow counsel.

On October 30, 2015, a 9-1-1 call was placed at approximately 12:05 a.m., and the caller reported that the driver of a white or "light-colored" compact sedan stopped at the intersection of Preachers Mill Road and Providence Boulevard in Clarksville was "passed out at the wheel." Officers Jan Salcedo and Alex Morgan of the Clarksville Police Department were dispatched to the scene to conduct a "welfare check." A video tape of the encounter was admitted as an exhibit.

On the videotape recording, Officer Salcedo arrives on the scene and pulls up behind the silver Volvo at approximately 12:11 a.m. It is not apparent from Officer Salcedo's dashboard camera video whether his blue lights are activated at this time. Officer Salcedo exits his patrol car and approaches the driver's side of the vehicle, where he observes both the driver and the front-seat passenger asleep inside. Officer Salcedo initially describes the occupants as two African-American males, although the passenger was later determined to be Hispanic.

Officer Salcedo knocks on the driver's side window to wake up the occupants. After the driver is awake, Officer Salcedo asks the driver to "just go ahead" and "put [the car] in park" and requests that the driver open the door. Officer Salcedo then unsuccessfully instructs the driver to open the door four more times, each time becoming more assertive. During this interaction, the driver has rolled down the window, although refusing to exit the car. In response to a question from the driver, Officer Salcedo says, "No, you're not free to go." However, the driver rolls the window up and still refuses to come out of the vehicle. Officer Salcedo attempts to open the door, but it is locked. As the driver begins to indicate that he is going to drive away, Officer Salcedo yells, "Don't go!" and "Stop, [s]top right now!" After the light turns green at approximately 12:13 a.m., the vehicle is driven away, and Officer Salcedo orders, "Hey, f--king stop the godd--n car!"

Officer Morgan is not visible on the video recording. It does look as if Officer Morgan's blue lights are activated just moments before the car is being driven away. However, all that is visible is a reflection of the flashing blue lights from Officer Morgan's patrol car, and this is the first time his voice is heard over the audio. Both Officer Salcedo and Officer Morgan leave to search for the suspect vehicle, which has disappeared out of sight. Officer Morgan is seen giving chase with his blue lights activated, which he then turns off.

At 12:15 a.m., Officer Salcedo located the suspect vehicle parked in the driveway of a burned-down house on Sunset Circle less than one-half mile from the intersection. Officer Morgan arrived just shortly thereafter. The recording equipment in Officer Salcedo's patrol car continued to capture the events over audio and sometimes there was video of the officers and the passenger. We glean from the recording that the driver had

abandoned the vehicle and was nowhere to be found. However, the Hispanic male passenger, later identified as Troy Lazano, was briefly detained. The officers wanted to make sure Mr. Lazano was not under the influence of any intoxicants, and following Mr. Lazano's satisfactory performance on several standard field sobriety tests, which was captured on video, he was permitted to get in his own car and drive away. In addition, Mr. Lazano can be heard on the recording telling the officers that he was tired because they had been working all day and that they had gone to eat at Buffalo Wild Wings where they each consumed "one drink."

While on the scene, the officers searched the suspect vehicle, which can also be heard over the audio portion of the recording. Officer Morgan found the Defendant's driver's license inside the vehicle. Officer Salcedo identified the Defendant, an African-American male, from the driver's license Officer Morgan found, which is captured over audio. Also, an officer can be heard saying that he found a six-pack of beer in the front seat of the car and that two cans were missing.

Both Officers Salcedo and Morgan testified at trial. Officer Morgan testified that, on October 30, 2015, they received a call from dispatch of "a possible 49 driver, . . . covert for a possible drunk driver." According to Officer Morgan, when he arrived on the scene, he approached the passenger's side of the vehicle, and the Defendant "had his head down passed out." Officer Morgan said that they decided to wake him up so they could "get him out of the car." Officer Morgan described that Officer Salcedo then knocked on the driver's side window, that the vehicle's occupants woke up, and that "the gentleman in the driver's seat looked up right at Officer Salcedo" and "grabbed the gear shift, confused—put it in reverse, put it [in] forward, put it in reverse and then finally took off." Officer Morgan testified that only two minutes elapsed before the suspect vehicle was found on Sunset Circle after leaving the intersection. Officer Morgan agreed that they "didn't pursue" the Defendant but merely started searching for him.

At trial, Officer Salcedo provided the details of the initial "welfare check" and identified the Defendant as the driver of the vehicle. He acknowledged that his initial report of two black males was incorrect. According to Officer Salcedo, the Defendant did not respond at first to his knocking on the driver's side window, but then the Defendant woke up and made eye contact with Officer Salcedo. Officer Salcedo explained that the Defendant "tried putting it in reverse, tried to put it in drive, a couple of times" before driving off and that the Defendant's car lights turned on and off. Officer Salcedo confirmed that, at one point, the Defendant did roll down his window "a little bit, . . . crack[ing] it open," but asserted that the Defendant did not say anything to him. In addition, according to Officer Salcedo, Officer Morgan "had just pulled up behind" Officer Salcedo when the Defendant drove off. Officer Salcedo informed Officer Morgan that the Defendant failed to stop and then ran.

-3-

Officer Salcedo confirmed that he commanded the Defendant to stop and that the Defendant was not free to go because he was possibly under the influence of an intoxicant. Furthermore, Officer Salcedo acknowledged that the Defendant did not take off at a high rate of speed, that he turned his "rear blue lights" off after he drove through the intersection in search of the Defendant, and that it was "safe to say" that his front blue lights were not activated when he pulled up behind the Defendant at the intersection. Officer Salcedo also said that it only took "a couple of minutes" to locate the Defendant's vehicle after the Defendant failed to obey Officer Salcedo's commands. Officer Salcedo explained that Mr. Lazano was located standing "one or two cars away from the Volvo," although the Defendant had abandoned the vehicle. Moreover, Officer Salcedo determined "[f]rom police records" that the car was parked in front of the Defendant's house, which had previously burned down.

Mr. Lazano testified on the Defendant's behalf.[1] Mr. Lazano said that, on October 30, 2015, he was helping the Defendant "clean up his house" that had recently burned down. Mr. Lazano claimed that they had been working "all day" beginning at approximately 6:00 a.m. and continuing until late into the evening and that they did not stop to eat. When they finished working around 10:00 or 11:00 p.m., the Defendant offered to take Mr. Lazano to Buffalo Wild Wings to eat as a "show" of appreciation. Mr. Lazano testified that he was twenty years old at the time and that they did not drink any alcohol while at the restaurant.

Mr. Lazano acknowledged that he fell asleep on the ride home from the restaurant. According to Mr. Lazano, when he awoke at the intersection, the light was green, and he heard the Defendant say to the police, "I'm going." Mr. Lazano testified that he did see Officer Morgan approach the passenger's side of the vehicle. In addition, Mr. Lazano opined that the Defendant was not aggressive towards Officer Salcedo and that the Defendant "didn't take off, he just kind of hit the gas." Mr. Lazano said that he did remember seeing blue lights at the intersection.

On cross-examination, Mr. Lazano admitted that Officer Morgan could have been at the passenger's side door and that he may not have seen Officer Morgan because he did not look in that direction. Mr. Lazano admitted to hearing the officer's yelling at the Defendant to stop. When asked if it "was satisfactory behavior" to keep going when instructed by the police to stop, Mr. Lazano responded in the negative and agreed that it was not okay for the Defendant to have done so.

Following the conclusion of the proof, the jury found the Defendant guilty as charged. Thereafter, the trial court sentenced the Defendant as a Range I, standard

---

[1] Interestingly, the Defendant states that Mr. Lazano did not testify to any "facts relevant to the issue raised on appeal."

offender, to eighteen months, which sentence was to be suspended to supervised probation after service of six months' incarceration. The Defendant's motion for new trial was denied, and his appeal is now properly before this court.

## ANALYSIS

The Defendant challenges the sufficiency of the convicting evidence. Specifically, the Defendant argues that the State failed to demonstrate that he received a signal from either Officer Salcedo or Officer Morgan while operating his vehicle to bring the vehicle to a stop or that he intentionally fled or attempted to elude the officers. The State counters that the evidence was sufficient.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The standard of proof is the same whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or circumstantial evidence." Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

Tennessee Code Annotated section 39-16-603 provides, in relevant part, that "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Tenn. Code Ann. § 39-16-603(b)(1). A violation of this section is a Class E felony. Tenn. Code Ann. § 39-16-603(b)(3).

The Defendant argues that the statute requires that the signal to stop must be given while he was operating the motor vehicle and that there was insufficient evidence of such. Relying on this rationale, the Defendant submits that "[t]he testimony of both officers as to what they said to [him] while he was stationary is irrelevant." However, this court has specifically rejected this argument, reasoning as follows:

> The adverbial clause "while operating a motor vehicle" modifies "to intentionally flee or attempt to elude." The statute does not require that the signal to stop be given while a defendant is operating a vehicle, but it does require that the flight occur while the defendant is operating a vehicle.

State v. Roy Daniel Mayo II, No. M2015-02267-CCA-R3-CD, 2016 WL 5385851, at *4 (Tenn. Crim. App. Sept. 26, 2016). Accordingly, the Defendant's argument that the signal to stop must have been given while he was operating his vehicle is without merit, only the flight must occur while the Defendant is operating his vehicle.

The Defendant further argues that there was insufficient proof that he knew he had received a signal from the police to stop his vehicle or that he "intentionally fle[d] or attempt[ed] to elude" either officer. The Defendant notes that "[n]either officer testified as to how close they were to [the Defendant] when they were following him"; that "[n]either officer testified as to how long they followed [him]"; that "[n]either officer testified that [he] drove at a high rate of speed or even recklessly"; and that, "[t]o the contrary[,] Officer Salcedo testified that he never turned on his 'front' blue lights."

Although "signal" is not defined in our code, the "term is unambiguous" as it is used in Tennessee Code Annotated section 39-16-603(b). State v. Gregory Dunnorm, No. E2001-00566-CCA-R3-CD, 2002 WL 1298770, at *4 (Tenn. Crim. App. June 12, 2002). "By using the phrase 'any signal,' the General Assembly, . . . intended to encompass a wide range of communications by an officer, not to require the use of blue lights and a siren." Id. Whether a defendant "knew that he [or she] had received a signal from the police to stop [the] vehicle . . . is a question of fact for the jury's determination." State v. James McClennon, M2002-00153-CCA-R3-CD, 2003 WL 21458671, at *6 (Tenn. Crim. App. June 24, 2003) (citation omitted). In addition, section 39-16-603(b)(1) speaks of a person's intentionally fleeing "after having received any signal from [a law enforcement] officer to bring the vehicle to a stop." This court has concluded that "[t]he statutory language is straightforward and unambiguous" that subsection (b) requires only a signal to stop, and not an arrest or attempted arrest. State v. Thaddaeus Medford, No. W2002-00226-CCA-R3-CD, 2003 WL 22446575, at *12 (Tenn. Crim. App. Oct. 21, 2003). Finally, the fact that the officer may or may not have thought that they had probable cause to make the stop is irrelevant. See State v. Bryan Herman Dowdy, No.

W2000-01011-CCA-R3-CD, 2001 WL 91732, at \*4 (Tenn. Crim. App. Jan. 26, 2001) (citing State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997)).

The proof established that a 9-1-1 call was placed at approximately 12:05 a.m., wherein the caller reported that a driver of a white or "light-colored" compact sedan was "passed out at the wheel" at the intersection of Preachers Mill Road and Providence Boulevard. Officer Salcedo pulled up behind the Defendant's Volvo six minutes later, and the car was still stopped at the intersection. Officer Salcedo had to knock on the driver's side window to wake up the occupants. According to Officer Salcedo, when the Defendant awoke, he made eye contact with Officer Salcedo. Officer Salcedo instructed the Defendant five different times to open the door, but the Defendant refused. During this interaction, the Defendant rolled down the window and asked a question. In response, Officer Salcedo said, "No, you're not free to go." However, the Defendant rolled the window back up. Officer Salcedo attempted to open the door, but it was locked. Before the Defendant drove away from the intersection at 12:13 a.m., Officer Salcedo yelled, "Don't go!"; "Stop, [s]top right now!"; and "Hey, f--king stop the godd--n car!" The Defendant "grabbed the gear shift, confused—put it in reverse, put it [in] forward, put it in reverse and then finally took off." He also turned his car lights on and off during this process, according to Officer Salcedo.

The blue lights from Officer Morgan's patrol car appeared in the video recording just moments before the Defendant drove away. In addition, Mr. Lazano testified that he recalled seeing blue lights while they were at the intersection. Officer Morgan gave chase with his blue lights activated, which, as seen in the video recording, he turned off after going through the intersection searching for the Defendant. Officer Salcedo acknowledged that he also turned his "rear blue lights" off after he drove through the intersection in search of the Defendant and that it was "safe to say" that his front blue lights were not activated when he pulled up behind the Defendant at the intersection. A mere two minutes later, Officer Salcedo located the Defendant's vehicle parked in front of the Defendant's house on Sunset Circle less than one-half mile away. Officer Salcedo was able to identify the Defendant as the driver of the vehicle from the Defendant's driver's license that was found inside.

Moreover, Mr. Lazano admitted to hearing Officer Salcedo's yelling at the Defendant to stop. According to Mr. Lazano, when he awoke at the intersection, he heard the Defendant say to the police, "I'm going." When Mr. Lazano was asked if it "was satisfactory behavior" to keep going when instructed by the police to stop, Mr. Lazano responded in the negative and agreed that it was not okay for the Defendant to have done so. Despite being a witness for the defense, Mr. Lazano's testimony provided further evidence that, when Officer Salcedo attempted to stop the Defendant, the Defendant intentionally fled.

In our view, the evidence establishes that the Defendant knew that he was signaled to stop by the police, yet he intentionally fled.  See, e.g., Medford 2003 WL 22446575, at *11-12 (holding the evidence was sufficient to support the defendant's evading arrest conviction because the jury rejected the defendant's testimony that he did not know that the men following him were law enforcement officers and his express denial that he did not see any blue lights); Dunnorm, 2002 WL 1298770, at *4 (citing State v. Joe David Sloan, No. W2000-02861-CCA-R3-CD, 2002 WL 1558586, at *6 (Tenn. Crim. App. Jan. 4, 2002)) (concluding that the proof established that the defendant understood the officer's "signal" to stop when the officer initially attempted to stop the defendant by using her marked cruiser to block his exit from the parking lot; prior to the defendant's driving into her cruiser, the defendant made eye contact and gunned the engine of his vehicle; after striking the cruiser, the officer repositioned it to again block the defendant's path; the defendant, however, drove around the cruiser; and when finally forced to the side of the road, the defendant remarked, "[I'm] not going to run anymore").

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the evidence supports the Defendant's conviction for Class E felony evading arrest.  The judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE